854 P.2d 1169

Patricia A. GUZMAN, nka Patricia Leos, Petitioner–Appellant,

v.

William F. GUZMAN, Respondent–Appellee.

No. 1 CA–CV 91–0193.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 12, 1993.

Review Denied July 7, 1993.

184

Yen, Hobson, Pilch & Ringler by William R. Hobson, Phoenix, for petitioner-appellant.

Wallace J. Baker, Jr., Phoenix, for respondent-appellee.

## OPINION

CONTRERAS, Judge.

This is a case in which a father, pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 25–320(C), was ordered to pay child support through the time that his child was expected to graduate from high school, even though the child would reach the age of majority before that date. However, the minor child married before graduating. The trial court subsequently ruled that the support obligation automatically terminated when the child married prior to graduating from high school and therefore, the mother was required to reimburse the father for the monies he paid to her after the child's marriage to the extent these monies exceeded what he already owed in child support arrearages. The mother appeals that ruling. We affirm.

## FACTS AND PROCEDURAL HISTORY

In January of 1975, the marriage of William and Patricia Guzman was dissolved. By the terms of the decree, which had been prepared by counsel for the mother and approved by the father, the mother received custody of the parties' three-year-old son. The father assumed a child support obligation in the amount of $75 per month until the child reached "the age of majority."

In September of 1988, when the child was sixteen, the mother sought modification of the child support order. In an order entered in December of 1988, the court found that changed circumstances justified an increase in child support to $235 per month. Because the child would turn eighteen before graduating from high school, the court ordered that the increased child support payments would extend beyond the child's eighteenth birthday through and including June 1, 1990, pursuant to A.R.S. section 25–320(C).

Six months after receiving the order of modification, the mother returned to court and requested a judgment for delinquent child support payments that had accrued in the years between 1981 and 1988. The

court granted this request and entered judgment against the father in November of 1989 for delinquent child support payments and accrued interest totaling $2,678.40.

Meanwhile, in April of 1989, the minor child married and soon thereafter became a father. He was able to continue with his high school education and graduate as planned by June of 1990. The father (appellee) was unaware of his son's marriage. He continued making child support payments through wage assignments under the modified order for nearly a year. When the father eventually ascertained that the marriage had taken place, he filed a petition for declaratory judgment and relief concerning his child support obligation. He asked the court to declare that his obligation to pay child support had ceased when his son became emancipated by marriage. He requested an order requiring the mother to pay back any excess child support he had paid.

The trial court, over the mother's objection, granted relief to the father. In its judgment and order entered in January of 1991, the trial court determined that pursuant to *Crook v. Crook*, 80 Ariz. 275, 296 P.2d 951 (1956), "upon marriage of a minor child no further action is needed by the non-custodial parent to terminate support payments previously ordered." It found that the minor child had married in April of 1989, and that child support payments of $235 per month had been made thereafter by wage assignment through June 1, 1990. After applying a set off for an accumulated arrearage that had not been paid by the father, the court found that the father had paid $400 more than his support obligation. Accordingly, the court ordered the mother to return this amount to the father. The mother appeals this order, raising the following issues:

(1) Whether the trial court's order was an impermissible retroactive modification of child support;

(2) Whether under the provisions of A.R.S. section 25–320(C) and the trial court's previous order of support, the child support ordered did not automatically terminate upon the marriage of the minor child; and

(3) Whether the father had entered into an enforceable agreement to provide child support until the age of majority, regardless of whether the child married prior to that time.

## DISCUSSION

We first consider the mother's argument that the trial court's order granting relief to the father was an impermissible retroactive modification of the child support order. We find this argument has no merit. The mother correctly points out that Arizona law does not allow support payments to be modified retroactively. This prohibition is articulated in A.R.S. section 25–327(A), which states that "except as otherwise provided in subsection F of § 25–317, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to notice of the motion for modification to the opposing party." This principle has been cited repeatedly in Arizona cases. *E.g., Lamb v. Superior Court,* 127 Ariz. 400, 621 P.2d 906 (1980); *Hatch v. Hatch,* 113 Ariz. 130, 547 P.2d 1044 (1976); *Westberry v. Reynolds,* 134 Ariz. 29, 653 P.2d 379 (Ct.App.1982).

In *Jarvis v. Jarvis,* 27 Ariz.App. 266, 268, 553 P.2d 1251, 1253 (1976), we stated that "each installment as it becomes due is in the nature of a final judgment conclusively establishing the rights and duties of the parties to that installment." Similarly, in *Baures v. Baures,* 13 Ariz.App. 515, 519, 478 P.2d 130, 134 (1970), Division Two of this Court noted that "a father who is required to make periodic payments for the support of minor children has an opportunity to relieve himself of that liability by a petition to modify the decree *in futuro* but he cannot remain silent while the installments accrue."

However, we conclude that the rule against retroactive modification of a child support order has no application to a situation in which a minor child has become emancipated through marriage. In *Crook,* a father who had been ordered to pay child

support "until majority or the further Order of the Court" was not required to first obtain a modification of the divorce decree to be relieved of his obligation where the minor child married before reaching the age of majority. 80 Ariz. at 276, 296 P.2d at 951. The Arizona Supreme Court concluded that the marriage automatically terminated the support obligation without any need on the part of the father to seek modification. *Id.* It stated:

> We hold that the marriage of the minor daughter in the instant case operated to create a relationship which was the legal equivalent of attaining majority on her part, within the contemplated meaning of the original decree of divorce as modified. The termination of the parental duty-relationship by her marriage had a direct effect upon the provisions of the decree, whereby no enforceable rights in support payments could thereafter accrue to plaintiff.

*Id.* at 278, 296 P.2d at 953.

■ The mother in the present case argues that the minor's marriage did not terminate the father's duty to provide support because of the legislature's subsequent modification of A.R.S. section 25–320(C) requiring support payments to continue past the age of majority while a child is attending high school. The mother argues that we should interpret section 25–320(C) and the trial court's order as requiring support payments to continue for a child attending high school after his emancipation whether it be by reaching the age of majority or by any other means such as marriage.

In 1987, the legislature added new subsection (C) to the child support statute. This subsection permitted the trial court to find that child support could continue past the age of majority if the child was actually attending high school, "but [could] not [continue] beyond June 1 of the school year during which the child reache[d] the age of majority." 1987 Ariz.Sess.Laws 223, 224. In 1988, the legislature deleted the lan-

guage that gave the trial court discretion to extend the child support payments and mandated that support continue for a child attending high school through June 1 of the school year during which the child reached the age of majority. 1988 Ariz. Sess.Laws 1300, 1304. In 1990, the statute was again modified to eliminate the "June 1" time restriction. The statute now provides that "support shall continue to be provided during the period which the child is actually attending high school." 1990 Ariz.Sess.Laws 1199, 1200–01. Pursuant to the version of section 25–320(C) then in effect, the trial court's December 1988 order required support payments to continue through June 1, 1990. The order stated as follows: the minor child will reach the age of emancipation before graduation from high school so that there is good cause to extend the child support payments beyond the age of eighteen (18) up through and including June 1, 1990."

If our interpretation of section 25–320(C) hinged solely upon the language contained in that subsection and the reasoning in *Crook*, we might agree with the mother. She argues that the legislature, in providing for support to continue for a child in high school even though he reached the age of majority, intended that the support obligation be unaffected by other types of emancipation as long as the requirement of staying in school was being met.[1]

Such an interpretation would not provide the mother with the full relief she is seeking. When the support obligation was modified, section 25–320(C) provided that support would not continue "beyond June 1 of the school year during which the child reache[d] the age of majority." The child was married in April of 1989. Consequently, even if we found that the child's marriage was the legal equivalent of the child's attaining majority within the meaning of section 25–320(C), we would have to conclude that support should not have continued beyond June 1 of 1989, the school year during which the child married.

---

1. We note that in *Crook,* the Supreme Court reasoned that the marriage of the minor was the legal equivalent of attaining majority within the

meaning of the decree entered in that case. 80 Ariz. at 276–77, 296 P.2d at 951.

■ Furthermore, we reject the argument that the legislature intended that the support obligation be unaffected by other types of emancipation as long as the requirement of staying in school was being met because we would have to ignore the following well-established rules of statutory construction to reach this result. It is a cardinal rule of construction that statutory provisions must be considered in the context of the entire statute and consideration must be given to all of the statute's provisions to determine the legislative intent manifested by the entire act. *Pinto Valley Copper Corp. v. Arizona Dep't of Economic Sec.*, 146 Ariz. 484, 486, 706 P.2d 1251, 1253 (Ct.App.1985). Another rule of statutory construction requires that different statutes dealing with the same subject matter should be construed together. *Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 361, 742 P.2d 858, 862 (Ct.App.1987). A statute is to be given such an effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant. *Marlar v. State*, 136 Ariz. 404, 411, 666 P.2d 504, 511 (Ct.App.1983). What a statute necessarily implies is as much a part of the statute as what the statute specifically expresses. *Hoyle v. Superior Court*, 161 Ariz. 224, 227, 778 P.2d 259, 262 (Ct.App. 1989).

Applying the foregoing rules of statutory construction, we look to subsection (A) of A.R.S. section 25–320, which contains the general provision that in a dissolution proceeding the court may order child support to be paid by either or both parents "owing a duty of support to a child, born to or adopted by the parents." Arizona Revised Statutes section 12–2451 is the statute that details the circumstances in which a duty of support by a parent is owed. Subsection (A) of that statute provides that "[e]very man and woman shall have the duty to provide all reasonable support for his or her natural and adopted minor, unemancipated children." The subsection then sets forth two additional situations in which support is owed including the circumstance that "[i]f a child reaches the age of majority while the child is attending high school, support shall continue to be provided during the period which the child is actually attending high school." A.R.S. § 12–2451(A)(2). This language is identical to that contained in subsection (C) of A.R.S. section 25–320.

■ Because section 12–2451 provides that parents owe support to "minor, unemancipated children," we conclude that by implication the statute provides that parents do not owe a duty of support to children who are no longer minors or who have become emancipated, except in the two special circumstances listed in the statute. The legislature was not using the phrase "minor, unemancipated children" to mean only those children who have not yet reached the age of majority. Otherwise, the legislature would not have used both the words "minor" and "unemancipated" to describe these children. The word "unemancipated" has a broader meaning than the word "minor." It describes not only children who have not yet reached the age of majority, but also children who have not become emancipated for other reasons such as marriage. The statute addresses minor children and children who have not become emancipated by other events. The legislature provided that the support obligation would be extended if a child attended high school after reaching the "age of majority," but did not provide that the support obligation would be extended if the child became emancipated for other reasons. We therefore conclude that the legislature did not intend the support obligation to continue if the child became emancipated for reasons other than reaching the age of majority.

The mother argues that in modifying the support order, the trial court intended support to continue after emancipation because it used the word "emancipation" in the order. This argument has no merit. The only thing stated in the order about "emancipation" was that the minor child would reach the "age of emancipation" before graduating from high school. In this context the trial court obviously treated the word "emancipation" as being synonymous with the word "majority," rather than us-

ing the word in its broader, more inclusive sense.

The mother also argues that emancipation does not take place merely because a child marries. Instead, she contends that the child has to leave the parental home and support himself before being considered emancipated. The mother has cited no authority for this argument and we are not persuaded by this distinction.

Additionally, the mother argues that under general principles of equity, she should be entitled to this assistance from the father because the father failed to make support payments over the years unless he was forced to do so and because she provided continued support to their son and to his wife and baby. Unfortunately for the mother, while dissolution proceedings are equitable proceedings, they are statutory in nature. The court therefore cannot order support where the relevant statutes do not provide for it. *Hodges v. Hodges*, 118 Ariz. 572, 576–77, 578 P.2d 1001, 1005–006 (Ct.App.1978).

As her final argument, the mother points out that the father signed his name on the dissolution decree, thereby indicating that he approved its terms. The decree included the provision that he pay $75 per month for child support until the child reached "the age of majority." The mother argues that this amounted to a contractual agreement by the father to pay support until the child reached the age of majority. She claims that because no circumstance other than reaching the age of majority was listed as an event terminating the support obligation, the child's marriage did not affect the asserted contractual obligation of paying support until the child reached the age of majority. We reject this argument.

Parties to a dissolution proceeding may enter into a binding contractual agreement for support payments that are not required by law. *See, e.g., Solomon v.*

*Findley,* 167 Ariz. 409, 808 P.2d 294 (1991); *Ruhsam v. Ruhsam,* 110 Ariz. 326, 518 P.2d 576, *supplemented by,* 110 Ariz. 426, 520 P.2d 298 (1974). Undoubtedly a father can execute a property settlement agreement in which he contractually agrees to pay support to the mother until the age of majority, regardless of whether the child marries before that date. Even if the domestic relations court had no authority to enforce such an agreement, it would be enforceable as a contract. *Solomon,* 167 Ariz. at 412, 808 P.2d at 298.

The mother, however, has failed to cite authority for the proposition that the father's mere approval of the decree gave the decree the status of a contractual agreement.[2] Even if the decree could be considered to be an agreement of the parties, we are not persuaded that the parties contemplated that the child would marry before reaching the age of majority. Moreover, the mother cannot argue that the terms of the original decree control when she elected to have the terms modified by subsequent court order.

Both parties have requested attorneys' fees on appeal. Arizona Revised Statutes section 25–324 governs attorneys' fees awards in domestic relations matters. The statute gives the court discretion to award reasonable attorneys' fees after considering the financial resources of each party. In the exercise of our discretion, we decline to award attorneys' fees to either party.

For the reasons set forth in this opinion, the trial court's rulings and orders are affirmed.

GRANT, P.J., and CLABORNE, J., concur.

---

**2.** Provisions in a decree may be the result of an agreement of the parties such as in *Perras v. Perras,* 151 Ariz. 201, 203, 726 P.2d 617, 619 (Ct.App.1986), where the parties through coun-

sel had stipulated to the provisions in open court. No similar showing of actual meeting of the minds is shown in this case.