NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

————————————————

In re the Marriage of:

JANE BACKUS, *Petitioner/Appellee*,

*v.*

LARRY A. BACKUS, *Respondent/Appellant*.

No. 1 CA-CV 14-0649 FC
FILED 4-26-2016

————————————————

Appeal from the Superior Court in Yavapai County
No. V1300DO201380132
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore*
The Honorable Mark M. Moore, Judge *Pro Tempore*

### VACATED AND REMANDED

————————————————

COUNSEL

Aspey Watkins & Diesel PLLC, Flagstaff
By Zachary J. Markham, Staci Lynn Foulks, Edward Jakob Walneck
*Counsel for Petitioner/Appellee*

Bryon Middlebrook PC, Flagstaff
By Bryon Middlebrook
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Margaret H. Downie joined.

---

**G E M M I L L**, Judge:

¶1          Lawrence Backus ("Husband") appeals an amended consent decree and order denying his motion for clarification/new trial. For the following reasons, we vacate the amended decree and the order denying Husband's motion for clarification/new trial and remand for further proceedings consistent with this decision.

## BACKGROUND

¶2          Upon dissolution of their marriage, Husband and Jane Backus ("Wife") negotiated a Partial Property Settlement Agreement ("the Agreement"). The Agreement laid out the parties' provisions for Wife's "spousal maintenance" as follows:

> Wife is unemployed and has no monthly income. Husband is retired and has gross monthly income on the sum of $7,593.14 from several sources (Social Security: $2,108.00; [Orange County] Assessor: $2,246.02; USMC (DFAS): $2,793.25; Boeing: $445.89). Husband shall pay to Wife, as and for spousal maintenance, the sum of $3,300 per month. Said payments shall commence on May 1, 2013 and [are] payable before or on the 5th day of each and every month thereafter, indefinitely. It is specifically agreed that this provision for spousal maintenance is not subject to modification. It is further agreed that spousal maintenance, payable pursuant to this provision, shall terminate immediately upon any of the following events with no further payments being required thereafter: Wife's death; Husband's death; Wife's remarriage or cohabitation.

The Agreement divided Husband's Boeing and Orange County pensions equally between the two spouses. It also set forth an unequal division of (1) Husband's USMC pension, with Wife receiving 9.38 percent and Husband receiving 90.62 percent; and (2) Husband's Social Security

2

benefits, with Wife receiving 30 percent and Husband receiving 50 percent.[1] The Agreement also stated:

> The division of these retirement accounts and assets is for the purpose of providing Wife with a spousal maintenance/ property equalization payment in the sum of $3,300 per month. The division of the assets is <u>not</u> in addition to the spousal maintenance/equalization payment.

**¶3** The parties then presented the family court with a proposed consent decree that referred to the Agreement. The consent decree contained an order stating:

> Petitioner [sic] is ordered to continue to pay to Respondent [sic] the sum of $3,300.00 per month as and for spousal maintenance, which began on the first day of May 2013, pursuant to the parties' Partial Property Settlement Agreement dated March 28, 2013. This monthly payment of $3,300.00 includes the Petitioner's interests in the Respondent's Boeing and Orange County Pensions, Respondent's social security and USMC pension. Each payment shall be made by the fifth day of each month and shall continue until either the Petitioner is remarried or deceased or until the Respondent is deceased. . . . Payments made shall be included in the receiving spouse's taxable income and is tax deductible from the paying spouse's income as required by law. The parties acknowledge that the circumstances of their futures are unknown but each desires that this maintenance award, so awarded by their agreement, not be modified in the future for any reason; therefore, it is at this time ordered that this spousal maintenance award shall NOT be modifiable for any reason.

The decree also awarded each party various other property and one-half of the Boeing and Orange County pensions pursuant to the "pre-approved" Qualified Domestic Relations Orders ("QDROs") filed with the court. The Orange County pension payments terminate upon Husband's death, but

---

[1] There is no explanation in the record or appellate briefs regarding the remaining 20 percent of Husband's Social Security benefits.

upon Wife's death become payable to her estate. Wife's payments from the Boeing pension terminate upon the death of either party.

**¶4**        Five months after the family court signed the consent decree, Husband filed a motion to set it aside pursuant to Arizona Rule of Family Law Procedure ("Rule") 85(C). Husband argued the decree erroneously ordered Wife to pay Husband support and awarded Wife an interest in Husband's Social Security benefits. Husband also argued the decree improperly granted Wife spousal maintenance in lieu of her property rights in the Boeing and Orange County pensions, but also inconsistently granted her community property rights in those pensions through the QDROs. Husband asked the court to set aside the decree, equitably allocate the community property, and determine whether Wife was entitled to spousal maintenance pursuant to Arizona Revised Statutes ("A.R.S.") section 25-319. Wife moved to dismiss Husband's motion and argued that any errors in the decree were merely clerical errors the court could correct without setting it aside.

**¶5**        Following argument on Husband's motion, the court signed an order setting aside the 2013 consent decree and the two QDROs. The court also signed an amended decree submitted by Wife. The amended decree provides as follows:

> _Respondent_ is ordered to continue to pay to _Petitioner_ the sum of $3,300.00 per month as and for spousal maintenance, which began on the first day of May 2013, pursuant to the parties' Consent Decree signed on August 6, 2013, which by this reference is incorporated herein. _Petitioner is to receive_ _$3,300.00 per month as and for spousal maintenance. This monthly_ _payment of $3,300.00 consists of a payment from Respondent's_ _Boeing pension in the amount of $220.60 per month (representing_ _Petitioner's community interest in Respondent's pension), a_ _payment from Respondent's Orange County pension in the amount_ _of $1,173.92 (representing Petitioner's community interest in_ _Respondent's pension), and the balance of $1,905.48 per month shall_ _be paid to Petitioner directly by Respondent._ Each payment shall be made by the fifth day of each month and shall continue until either the Petitioner is remarried or deceased or until the Respondent is deceased. . . . Payments made shall be included in the receiving spouse's taxable income and is [sic] tax deductible from the paying spouse's income as required by law. The parties acknowledge that the circumstances of their futures are unknown but each desires that this maintenance

award, so awarded by their agreement, not be modified in the future for any reason; therefore, it is at this time ordered that this spousal maintenance award shall NOT be modifiable for any reason.

(Emphasis in original.) The amended decree also awarded Wife, as her separate property:

Petitioner's one-half community interest in Respondent's Boeing Pension in Respondent's name payable at the rate of $220.00 per month [and] Petitioner's one-half community interest in Respondent's Orange County Assessor pension in Respondent's name payable at the rate of $1,173.92 per month.

No new QDROs were issued.

¶6 Following the trial court's orders, Husband filed a motion for clarification/motion for new trial. The family court denied Husband's motion, and Husband filed a notice of appeal. At the time of filing, however, the trial court's order was still unsigned. Accordingly, this court stayed the appeal and re-vested jurisdiction in the family court to allow it to issue an appealable, signed order. Husband then timely filed a second notice of appeal that included the signed order denying his motion for clarification/motion for new trial. We have jurisdiction pursuant to A.R.S. §§ 12-2101(A)(2) and 12-2101(A)(5)(a).

## DISCUSSION

¶7 Husband argues the court erred by denying his motion to set aside. He argues the trial court should not have entered the amended decree without hearing additional evidence, and that the amended decree did not fix the legal errors contained in the original decree. We review the trial court's ruling on a Rule 85(C) motion to set aside for an abuse of discretion. *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8 (App. 2012).

### I. Errors in Decree Were Not Merely Clerical

¶8 Wife maintains any errors in the original decree were clerical errors because the court did not "intend" to approve mistaken language. *See Ace Auto. Prods., Inc. v. Van Duyne*, 156 Ariz. 140, 142–43 (App. 1987) (explaining that courts may correct clerical errors, but may not change the

5

substance of a judgment if it reflects the court's intended result); Rule 85(A). We agree that the decree's mislabeling of the parties, which provided Wife would pay support to Husband rather than Husband paying support to Wife, was a clerical error that was properly corrected under Rule 85(A). *See Ace Auto. Prods.*, 156 Ariz. at 142 (holding difference between judgmental and clerical error is "whether the error occurred in rendering the judgment or in recording the judgment rendered."). But the remaining issues Husband raises are legal questions.

**¶9**　　　　When it is presented with a consent decree, the family court has a statutory obligation to determine whether the parties' agreement achieves a fair and equitable property distribution. *See* A.R.S. § 25-317(B); *Wick v. Wick,* 107 Ariz. 382, 385 (1971); *Sharp v. Sharp*, 179 Ariz. 205, 210 (App. 1994). The existence of a consent decree does not give the family court discretion to delegate this obligation to the parties by signing a consent decree without reviewing its terms. *See Wick,* 107 Ariz. at 385; A.R.S. § 25-318(A). Because the amended decree contains legal mistakes, Husband was entitled to seek review of the amended decree under Rule 85(C).

## II.　Legal Errors in Amended Decree

**¶10**　　　　Husband argues the original consent decree contained irreconcilable provisions. According to Husband's interpretation, the parties intended to award Wife spousal maintenance in lieu of her community property interests in Husband's pensions. He therefore contends it was inconsistent to award Wife an interest in those pensions under the QDROs. Husband also argues the court abused its discretion by entering an amended decree that substantively changed the original consent decree without evidence supporting the changes.[2] Although we reject Husband's interpretation of the consent decree and the Agreement, we agree there are several errors in both the original and amended decrees.

**¶11**　　　　First, the decree conflates property rights with "spousal maintenance." "Property division and spousal maintenance are two

---

[2] Wife argues Husband waived his right to object to the amended decree because he did not submit an amended decree to the family court. Instead, Husband submitted an order setting aside the consent decree, consistent with the relief he sought. This is what the family court anticipated from Husband, and we find no waiver.

separate and distinct considerations at dissolution and [ ] increased spousal maintenance cannot justify depriving a spouse of his or her property right." *Cooper v. Cooper,* 167 Ariz. 482, 488 (App. 1990); *see also Koelsch v. Koelsch,* 148 Ariz. 176, 182 (1986). Spousal maintenance is not a proper vehicle for settling the parties' community property interests. Instead, it is awarded where necessary for the spouse's support. *See Buttram v. Buttram*, 122 Ariz. 581, 582 (App. 1979). The court may consider the community property allocated to the spouse in determining whether that spouse is entitled to spousal maintenance, but the parties cannot deny a spouse his or her property rights in exchange for spousal maintenance. *See* A.R.S. § 25-319(A); *see also Cooper,* 167 Ariz. at 488.

¶12 Generally, pension plans are community property subject to equitable division upon dissolution. *Koelsch,* 148 Ariz. at 181; *Cooper,* 167 Ariz. at 487; A.R.S. § 25-318(A). But under the decree, Wife's "spousal maintenance" payments, which include a portion of her community interest in Husband's Boeing and Orange County pension, terminate upon either party's death or Wife's remarriage. Thus, the decree runs afoul of Arizona community property law by improperly divesting Wife of her vested rights in community property that should survive her death or remarriage. *See Koelsch,* 148 Ariz. at 181.

¶13 The decree also deprives Husband of his separate property interest. The original decree awarded Wife a portion of Husband's separate property, namely, his Social Security benefits and USMC pension. *See Kelly v. Kelly,* 198 Ariz. 307, 308, ¶ 5 (2000) (explaining that federal law prohibits Social Security benefits from being divided by state courts upon dissolution). Wife concedes that Husband's Social Security benefits and his USMC pension are his separate property and not subject to equitable allocation, but argues the amended decree corrects the error by deleting those two property awards. We disagree, because the original decree specifically stated that the $3,300 payment amount included Wife's interest in Husband's Social Security benefits and USMC pension. Under the amended decree, Wife is still entitled to $3,300 per month. Accordingly, the amended decree presumably still places some monetary value on Husband's separate property interests.

¶14 Finally, the amended decree contemplates that a portion of the $3,300 "spousal maintenance" payment will come from the QDROs. But the family court set aside the QDROs when it set aside the original decree. Therefore, the decree is flawed because it relies on QDROs no longer in effect. The fact that Wife may be receiving the previously designated

payment amounts from the QDROs does not, by itself, breathe life into QDROs that have been set aside by court order.

¶15 Because the amended decree contains legal errors, the family court erred by denying Husband's motion for clarification/motion for new trial.[3] *See Flying Diamond Airpark, LLC v. Meienberg,* 215 Ariz. 44, 50, ¶ 27 (App. 2007) (holding a trial court abuses its discretion if it commits an error of law).

## III.   Non-Modifiability Language Does Not Preclude Relief

¶16 Wife contends that, even if it is flawed, the court could not set aside the entire spousal maintenance award because Husband agreed to a "non-modifiable" spousal maintenance payment of $3,300.  Under A.R.S. § 25-317(G), "entry of a decree that sets forth or incorporates by reference a separation agreement that provides that its maintenance terms shall not be modified prevents the court from exercising jurisdiction to modify the decree and the separation agreement regarding maintenance[.]" Interpreting this statute, our supreme court has held that when parties agree to non-modifiable spousal maintenance, the family court may not consider a petition to modify a decree even if a substantial change in circumstances has occurred.  *In re Marriage of Waldren,* 217 Ariz. 173, 175, ¶¶ 9–10 (2007).  Wife argues that A.R.S. § 25-317(G) should apply to the consent decree here and that the family court was precluded from modifying it beyond correcting the clerical errors it contained.

¶17 As discussed above, however, the payment here is not entirely "spousal maintenance," and on this record, it is not possible to determine what portion of the lump sum payment may accurately be classified as spousal maintenance.  Additionally, to the extent that it deemed Wife's community property as a portion of her spousal maintenance, the decree is erroneous.  The parties cannot prevent the court from exercising its authority to grant relief by classifying a legally erroneous payment provision as "non-modifiable."  *Sharp,* 179 Ariz. at 210 (explaining that parties cannot by agreement "'completely defeat the

---

[3]   Wife argues for the first time on appeal that Husband improperly combined a motion for clarification with a motion for new trial.  We will not address arguments raised for the first time on appeal.  *See K.B. v. State Farm Fire & Cas. Co.,* 189 Ariz. 263, 268 (App. 1997).  Moreover, at the time Husband filed his motion in 2014, combined motions were not prohibited. *Compare* Rule 84(B) (2016) *with* Rules 83, 84, 85 (2014).

authority expressly conferred upon the trial court by our statute.'" (*quoting Wick,* 107 Ariz. at 385)).

**¶18**      Because the decree is legally erroneous, the parties' "non-modifiable" language does not prevent the court from vacating it. Accordingly, the family court erred by denying Husband's motion for clarification/motion for new trial.

## CONCLUSION

**¶19**      We vacate the amended decree and remand for a new trial regarding allocation of the community property and the award of spousal maintenance to Wife.  Having found the amended decree was erroneous, we also vacate the order denying Husband's motion for clarification/ motion for new trial.

**¶20**      Both parties request an award of attorneys' fees and costs pursuant to A.R.S. § 25-324.  Husband also asks for an award of fees as a sanction for Wife's allegedly baseless positions.  *See* Rule 31 and A.R.S. § 12-349.  We do not agree that a sanction is warranted on this record, and we therefore deny the request under Rule 31 and A.R.S. § 12-349.  Additionally, in the exercise of our discretion under A.R.S. § 25-324, we decline to award fees to either party.  As the successful party on appeal, however, Husband is entitled to his taxable costs on appeal pursuant to A.R.S. § 12-342.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama