NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MARY LABARGE, *Petitioner/Appellant*,

*v.*

IBRAHIM ABDULLAHI, *Respondent/Appellee*.

No. 1 CA-CV 22-0379 FC
FILED 1-12-2023

Appeal from the Superior Court in Maricopa County
No. FN2020-096514
The Honorable David E. McDowell, Judge

**AFFIRMED IN PART; VACATED IN PART, AND REMANDED**

COUNSEL

The Hogle Firm PLC, Mesa
By Nathan Hogle
*Counsel for Petitioner/Appellant*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

_____

**B A I L E Y**, Judge:

¶1          Mary LaBarge ("Wife") appeals from the superior court's decree dissolving her marriage to Ibrahim Abdullahi ("Husband") and order denying her motion to alter or amend the decree.  Wife argues the court erred in (1) not crediting the marital community with an equitable lien for the down payment on a property (the "Cave Creek Property") owned separately by Husband; (2) denying her the opportunity to further investigate Husband's bank accounts and financial information; (3) finding she had not shown that Husband committed marital waste; and (4) denying her request for a longer duration of spousal maintenance.  For reasons that follow, we vacate the court's equitable lien on the community's interest in the Cave Creek Property and remand for reconsideration of that issue consistent with this decision.  In all other respects, we affirm the court's decree and order.

## FACTS AND PROCEDURAL HISTORY

¶2          The parties married in May 2000 and have no minor children from the marriage.  Wife petitioned for dissolution in August 2020.

¶3          In January 2022, the superior court held a trial on the petition, and each party testified and presented evidence.  After taking the matter under advisement, the court issued a decree of dissolution certified as appealable under Arizona Rule of Family Law Procedure ("ARFLP") 78(b) in February 2022.

¶4          Wife timely moved to alter or amend the decree, *see* ARFLP 83, and after responsive briefing, the court denied the motion.  However, the court did clarify some of its rulings in the order.

¶5          We have jurisdiction over Wife's timely appeal under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) and (2).

## DISCUSSION

I. The Equitable Lien on the Cave Creek Property

¶6 Wife argues the superior court erred in calculating the marital community's equitable lien on the Cave Creek Property because the court mischaracterized the funds used for the down payment on the property as Husband's sole and separate property. She contends Husband bore the burden of proving by clear and convincing evidence that the funds used for the down payment came from his separate property and that he did not meet his burden.

¶7 We review *de novo* the court's characterization of property. *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). "Property takes its character as separate or community at the time of acquisition and retains that character throughout the marriage." *Id.* (quoting *Bell–Kilbourn v. Bell–Kilbourn*, 216 Ariz. 521, 523, ¶ 5 (App. 2007)). "Because property acquired during marriage is presumed to be community property, the spouse seeking to overcome the presumption has the burden of establishing the separate character of the property by clear and convincing evidence." *Id.* (citing *Brebaugh v. Deane*, 211 Ariz. 95, 98, ¶ 6 (App. 2005)).

¶8 Absent fraud or mistake, a signed disclaimer deed rebuts the community property presumption. *See generally Bell–Kilbourn*, 216 Ariz. at 523-24, ¶¶ 7, 11. However, even if a disclaimer deed is valid and the house is one spouse's separate property, the community may be entitled to a share of any equity in the house attributable to the community's expenditure of funds. *See Honnas v. Honnas*, 133 Ariz. 39, 40 (1982); *Bell–Kilbourn*, 216 Ariz. at 524, ¶ 12. The purpose of an equitable lien is to reimburse the non-owning spouse for a portion of the community's contributions to the equity of the owning spouse's separate property. *Valento v. Valento*, 225 Ariz. 477, 481-82, ¶¶ 12-13 (App. 2010).

¶9 Here, the court found that the Cave Creek Property was acquired during the marriage, which would presumptively make it community property. At trial, however, Husband presented both a warranty deed stating the property was his sole and separate property and a disclaimer deed signed by Wife in which she affirmed the property was Husband's sole and separate property and the down payment on the property had been paid with Husband's separate funds. The court found that Husband had rebutted the presumption that the property was community property and further found that although Wife claimed the down payment was made with community funds, she had failed to produce

sufficient evidence to rebut the statement in the disclaimer deed. The court did find that an equitable community lien existed on the property, however, based on the use of community funds to pay the mortgage, but did not include the down payment in the equitable lien.

¶10 Later, in denying Wife's motion to alter or amend the decree, the court also explained that Wife "failed to produce sufficient evidence to [rebut the disclaimer deed and] establish that the down payment . . . was made with community funds. In fact, her testimony was that she was unable to determine the source of funds used for the down payment."

¶11 The superior court was correct in its characterization of Wife's testimony and the burden of proof. Once Husband presented, and the court admitted, the disclaimer deed, the court could reasonably determine that Husband met his burden of proof on the source of the funds for the down payment, and the burden shifted back to Wife to establish that the down payment was made with community funds. And Wife testified that, although she was certain the down payment was made with community funds, she could not pinpoint the source of the funds, ostensibly because Husband had not disclosed that information.

¶12 The court erred, however, in failing to also consider Husband's testimony that the funds for the down payment came from proceeds from a lawsuit settlement against a prior employer during the parties' marriage and from withdrawals from his employee stock purchase plan, all of which—based on Husband's testimony—were presumptively community funds.

¶13 Husband relies on *Hefner v. Hefner*, 248 Ariz. 54, 57-58, ¶¶ 7, 10 (App. 2019), to argue that proceeds from personal injuries are presumptively separate. Although that may be true, Wife testified that Husband's lawsuit involved an employment discrimination claim. Notably, Husband did not testify that the lawsuit involved personal injuries of the nature addressed in *Hefner* or *Jurek v. Jurek*, 124 Ariz. 596 (1980), on which *Hefner* relied. As such, Wife's testimony stands as undisputed, and the superior court did not find her testimony not credible.

¶14 Although the parties' testimony does not invalidate or defeat the title transfer effected by the disclaimer deed, it eliminates any factual dispute as to the character of the property used to purchase the Cave Creek Property. *See Kadiyala v. Vemulapalli*, 1 CA-CV 17-0111 FC, 2019 WL 311713, at *3, ¶ 13 (App. Jan. 24, 2019) (mem. decision). The valid disclaimer deed established that the Cave Creek Property is Husband's sole and separate

property, but it does not trump the facts (including Husband's admissions) adduced at trial for calculating an equitable lien. *Cf. id.* (citing *Wick v. Wick*, 107 Ariz. 382, 385 (1971) (holding that the court has an obligation to fairly and equitably allocate community property and is "not foreclosed from doing so by the parties' separation and property settlement agreement")). Accordingly, the superior court erred by failing to include the community funds used for the down payment when calculating the community's equitable lien.

¶15 On remand, in determining the community's equitable lien value, the court must include the down payment to the extent it reduced the principal. To hold otherwise would deny Wife her interest in the community funds and provide Husband a windfall. *See Wick*, 107 Ariz. at 385.

II. Wife's Opportunity to Further Investigate

¶16 Wife also argues the superior court abused its discretion by not granting her motion to compel in full. She argues the court "refused" her requests that Husband fully identify all his bank accounts (Non-Uniform Interrogatory No. 1) and that he disclose all documents showing the source of the funds used to purchase the Cave Creek Property (Request for Production No. 2). Based on our resolution of the community lien on the Cave Creek Property, we need only address this issue as it relates to Wife's waste claim.

¶17 We review the superior court's rulings on discovery-related issues for an abuse of discretion. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 253, ¶ 10 (2003). "We will not interfere in matters within [the court's] discretion unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial." *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 27 (1966). In general, "[t]rial judges are better able than appellate courts to decide if a disclosure violation has occurred in the context of a given case and the practical effect of any non-disclosure." *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9 (App. 2010).

¶18 In March 2021, more than ten months before trial, Wife moved to compel discovery. *See* ARFLP 65(a). After briefing, the superior court ordered Husband to fully respond to Wife's Request for Production No. 1 and Non-Uniform Interrogatory Nos. 2 and 4 by June 2021. In August 2021, Wife moved to continue trial, which was set for August 24, because Husband had purportedly not fully complied with the court's order, and

Wife stated she planned to file a motion for sanctions. *See* ARFLP 65(b). The court continued trial to January 2022.

**¶19**         Wife moved for sanctions in late September 2021. Husband objected, and in November 2021, the court issued further orders related to discovery. The court noted that Wife had received some of the bank records she had requested and ordered her to subpoena—at Husband's expense— the bank records she asserted were missing from Husband's disclosure and discovery responses. The court also ordered Husband to fully answer Wife's Non-Uniform Interrogatory No. 4 no later than November 24, 2021. Finally, the court ordered that

> on November 30, 2021, if there are any outstanding discovery request[s] which are due more than 15 days, the propounding party shall file with the Court a Notice of Outstanding [D]iscovery, which shall consist of no more than 4 pages and shall LIST the items missing and identify when the request was propounded and when the Rule 9 conference occurred to secure compliance with the discovery request. . . .
>
>         . . . .
>
> [Wife]'s request for a hearing to address this discovery issue is denied at this time. If discovery abuses occur, [Wife] can re-urge [her] request for a hearing.

Neither party made such a filing by November 30, 2021.

**¶20**         After trial and entry of the decree, in her motion to alter or amend the decree, Wife raised the issue of Husband's disclosure, arguing the superior court had refused her request to conduct discovery. The court characterized her argument as "simply wrong," noting that her "recourse if she believed that discovery and disclosures were not complete was to seek redress from the Court (which it gave her three separate times) prior to Trial and not after a decision is rendered."

**¶21**         We find no abuse of the superior court's discretion. Even assuming this issue is not waived, *see Medlin v. Medlin*, 194 Ariz. 306, 308, ¶ 6 (App. 1999), the record reflects that the court ruled on each of Wife's discovery motions—albeit apparently not always to Wife's complete satisfaction—and allowed her to conduct financial discovery throughout the case. And at no time after the court addressed Wife's motion for sanctions did Wife raise the of lack of disclosure or discovery responses issues with the court before entry of the decree. Although the court

6

specifically ordered the parties to file a notice if there was still missing discovery or disclosure, neither party did so. Further, although advised that she could do so, Wife did not re-urge her request for a discovery-related hearing, and in her pretrial statement filed eleven days before trial, Wife represented that "[t]he parties have completed disclosure and discovery." Wife also did not request a second continuance before trial began to pursue additional disclosure or discovery, and even at trial, Wife made no request for a continuance and simply moved forward with trial.

¶22 It was Wife's responsibility to bring the alleged deficient disclosure and discovery issues to the superior court's attention, and to ask for a pretrial continuance if she believed more discovery was necessary. Wife failed to do so, and she did not raise the issue until her post-trial motion to alter or amend the decree. Wife has shown no reversible error. *See Link v. Pima Cnty.*, 193 Ariz. 336, 338, ¶ 3 (App. 1998). Accordingly, the superior court did not abuse its discretion when it ruled on Wife's discovery-related motions and motion to alter or amend the decree.

III. Marital Waste

¶23 Wife next argues the superior court erred in concluding she did not establish that Husband committed marital waste.

¶24 We review the superior court's conclusion for an abuse of discretion, while viewing the evidence in the light most favorable to sustaining the court's findings and determining whether the evidence reasonably supports those findings. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998). The superior court is in the best position to assess witness credibility, resolve conflicts in evidence, and assign the weight to give conflicting testimony. *See id.* at 347, ¶ 13; *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015).

¶25 Marital waste refers to one spouse's ability to recover against the other for "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community" property. A.R.S. § 25-318(C); *see, e.g., Martin v. Martin*, 156 Ariz. 452, 454-58 (1988). A spouse alleging excessive or abnormal expenditures by the other spouse bears the burden of making a prima facie showing of waste. *Gutierrez*, 193 Ariz. at 346, ¶ 7. It is then the spending spouse's burden to rebut the waste showing. *Id.* at 346-47, ¶ 7.

¶26 Wife presented evidence that during the 20-year marriage, Husband sent more than $102,000 in community funds to his family in Nigeria, and she argued at trial that Husband had committed marital waste.

Husband denied the waste allegation, adding Wife was aware he had sent money to his family to pay for his elderly (and since deceased) parents' medical and other bills and had encouraged him to do so. Although Wife maintained the community did not benefit from these expenditures, Husband testified it did, by translating to a greater satisfaction between the parties in the marriage.

¶27 The superior court denied Wife's waste claim, finding that although Husband had transferred an average of around $15,000 per year to his family for several years, he was earning $150,000 to $170,000 per year and the couple had a combined annual gross income of $225,000 to $245,000 during that time. The court found that the funds transfer to Husband's family in Nigeria "was not an excessive or abnormal expenditure when considering the income of the couple" and that "no evidence of destruction of community assets" had been presented. The court also concluded that although the parties had introduced conflicting evidence of whether Wife was aware of the transfers,[1] insufficient evidence had been presented for the court to find concealment or fraudulent disposition of the assets.

¶28 In denying Wife's motion to alter or amend the decree, the court clarified that it had determined Wife had not met her burden of making a prima facie case that waste existed, and it explained it had reached its determination after assessing credibility and weighing conflicting evidence.

¶29 Wife has shown no abuse of the superior court's discretion. The court found that Wife failed to establish that Husband's expenditures were excessive or abnormal, *see id.* at 346, ¶ 7, and reasonable evidence in the record—which reflects that Husband regularly sent money to extended family over the years and that such payments were a normal community expense for the couple, not marital waste—supports that finding. Accordingly, we affirm the denial of Wife's community waste claim.

IV. Spousal Maintenance

¶30 The superior court awarded Wife $1000 in monthly spousal maintenance for one year. Wife does not dispute the monthly amount but argues the court abused its discretion in limiting the duration to one year.

¶31 Subsection (A) of A.R.S. § 25-319 governs the award of spousal maintenance, and subsection (B) provides factors the court may

---

[1] Wife testified she knew Husband was sending money to Nigeria, but she did not "know who he was sending money to, and how much."

consider when determining the amount. The aim of spousal maintenance "is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance." *Schroeder v. Schroeder*, 161 Ariz. 316, 321, (1989); *accord Rainwater v. Rainwater*, 177 Ariz. 500, 503 (App. 1993) (recognizing that, whenever possible, an order for spousal maintenance "should promote a transition toward financial independence").

**¶32**      We review an award of spousal maintenance for an abuse of discretion, *Kelsey v. Kelsey*, 186 Ariz. 49, 53 (App. 1996), and will uphold it "if there is any reasonable evidence to support the judgment," *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984). We view the evidence in the light most favorable to the non-appealing party, *In re Marriage of Pownall*, 197 Ariz. 577, 583-84, ¶ 31 (App. 2000), and will not substitute our opinion for that of the superior court, *Deatherage v. Deatherage*, 140 Ariz. 317, 319 (App. 1984).

**¶33**      In the decree, the superior court properly considered the factors under § 25-319(B) in determining the amount and duration of spousal maintenance awarded to Wife. Wife argues, however, that the court's award effectively orders her to "forgo social security" and return to work. Even if Wife did not waive this argument by failing to raise it until her motion to alter or amend the decree, *see Medlin*, 194 Ariz. at 308, ¶ 6, she has shown no abuse of discretion. As the superior court correctly found, federal law allows a recipient to work and receive social security benefits at the same time. *See* SSA Pub. 05-10069 (amended Apr. 2022), https://www.ssa.gov/pubs/EN-05-10069.pdf, at 1. And although a recipient who is younger than full retirement age and earns more than certain amounts may have her benefits temporarily reduced, the amount that the benefits are reduced isn't truly lost because the benefit amount will increase at full retirement age to account for benefits withheld due to earlier earnings. *Id.* Further, once a recipient reaches full retirement age, she can keep working and receive the full amount of her social security benefit. *Id.* Therefore, the court's spousal maintenance award does not require Wife to forgo social security benefits.

**¶34**      And we agree with the superior court that Wife's reliance on *Howell v. Howell*, 137 S. Ct. 1400, 1402 (2017), is unavailing. A state court "cannot 'vest' that which (under governing federal law) [it] lack[s] the authority to give," *id.* at 1405, and *Howell* does not require a state court to make spousal maintenance payments perpetual if the recipient also receives federal benefits. Accordingly, the superior court did not abuse its discretion in its spousal maintenance award to Wife.

V.     Attorneys' Fees on Appeal

**¶35**     Wife has not requested attorneys' fees on appeal, and none are awarded to her.  Husband requests attorneys' fees on appeal under A.R.S. § 25-324.  Wife did not take unreasonable positions on appeal, however, and in the exercise of our discretion, we deny Husband's request for attorneys' fees.  We award taxable costs to Wife upon compliance with Rule 21, ARCAP.

## CONCLUSION

**¶36**     For the foregoing reasons, we vacate the court's equitable lien calculation on the Cave Creek Property and remand for reconsideration consistent with this decision.  We otherwise affirm the decree and order denying Wife's motion to alter or amend the decree.



AMY M. WOOD • Clerk of the Court
FILED:     AA